UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FREDERICK A. MUNDT,

      Petitioner,

  v.

CHARLOTTE JENKINS, Warden,

      Respondent.

Case No. 2:17-cv-00773

Barrett, J.
Bowman, M.J.

**DECISION AND ORDER**

In August 2018, Petitioner Frederick Mundt filed his Petition for Writ of Habeas Corpus advancing ten grounds for relief. (ECF No. 18.) He now seeks to return to the state court to exhaust two of those claims. (ECF No. 22.) The Warden has opposed Mundt's motion (ECF No. 24), and Mundt has filed his Reply (ECF No. 25). The matter is now ripe for decision and is a non-dispositive pretrial motion on which an assigned Magistrate Judge has authority to rule in the first instance, subject to appeal to the assigned District Judge. 28 U.S.C § 636(b)(1)(A); Fed.R.Civ.P. 72(a).

> Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (noting that "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts"). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). . . . The habeas petitioner bears the burden of demonstrating exhaustion of the available state court remedies with respect to the

1

claims presented for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

*Juan v. Warden, Chillicothe Correctional Institute* [sic], Case No. 2:17-cv-1056, 2018 WL 1942272 at *3 (S.D. Ohio Apr. 25, 2018)(parallel citations omitted)(Report and Recommendations, adopted at 2018 WL 3304610 (S.D. Ohio July 5, 2018); *see also Tullis v. Kontah*, Case No. 2:06-cv-1025, 2007 WL 915197 at *3 (S.D. Ohio Mar. 26, 2007).

District courts have authority to grant stays in habeas corpus cases to permit exhaustion of state court remedies in consideration of the Anti-Terrorism and Effective Death Penalty Act's preference for state court initial resolution of claims. In recognizing that authority, however, the Supreme Court observed:

> Staying a federal habeas petition frustrates [the] AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines [the] AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.
>
> . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").
>
> . . .

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines v. Weber*, 544 U.S. 269, 277-278 (2005). The Supreme Court also directed district courts to place reasonable time limits on the petitioner's trip to state court and back and thereby endorsed the approach suggested in *Palmer v. Carlton*, 276 F.3d 777, 780-81 (6th Cir. 2002), and *Hill v. Anderson*, 300 F.3d 679, 683 (6th Cir. 2002).

Thus, the "stay and abey" procedure is appropriate only if Mundt can show that (1) his unexhausted claims are not plainly meritless, and (2) there was good cause for failing to present the claims to the state court before petitioning for habeas corpus relief in this Court.

Mundt begins by broadly arguing that the ineffectiveness of his post-conviction counsel establishes good cause for his failure to exhaust his two unexhausted claims in the state court, citing *Rhines v. Weber*, 408 F.Supp.2d 844, 848-49 (D. S.D. 2005), and stating that his unexhausted claims are "newly discovered by habeas counsel." (ECF No. 22, PageID 14461.) He provides no other information on how or when current counsel became aware of the "newly discovered" evidence, nor even what that evidence is. Mundt somewhat counfoundingly discusses the possible future applicability of *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), which concern procedural default, not exhaustion.[1] In any case, that contingency is premature at this time and will be considered if and when it materializes.

---

[1] In *Martinez*, and later in *Trevino*, the Supreme Court carved out a narrow non-constitutional exception to its previous holding in *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), that ineffective assistance in post-conviction proceedings will not excuse a procedural default. The *Martinez/Trevino* exception allows that post-conviction counsel's ineffectiveness **may** excuse a procedurally defaulted but substantial claim that a petitioner's trial counsel were ineffective. A petitioner's success under *Martinez/Trevino* relieves him of the obligation to return to the state court to litigate his ineffective assistance of trial counsel claim. In contrast, granting the staying of a habeas case and holding

3

Numerous courts have discussed the absence of clear guidance from the Supreme Court on what constitutes "good cause" in the stay and abey context. *See, e.g., Williams v. Hurley*, Case No. 2:05-cv-985, 2006 WL 1650771 at *11 (S.D. Ohio June 6, 2006)(Report and Recommendation summarizing cases) *adopted at* 2006 WL 1804550 (S.D. Ohio June 28, 2006). Likewise, the Sixth Circuit Court of Appeals has not set forth any standard for what constitutes good cause in this context, but in a few cases it has determined whether the petitioner met the requirement. In *Carter v. Mitchell*, 829 F.3d 455, 467 (6th Cir. 2016), for instance, the court concluded that the petitioner had not demonstrated good cause because he made no allegation that the evidence he wished to present to the state court was unavailable to his counsel on direct appeal or in state post-conviction proceedings. In another case, while discussing whether a petitioner's unexhausted claim was plainly meritless, the court of appeals noted that "Cowan's claim is that her lawyer was ineffective as a result of his failure to interview at least four other witnesses who were in the . . . house on the date of the controlled buy and raid. That omission itself amounted to patently deficient performance on her lawyer's part," which implies that deficient performance by counsel may satisfy the good cause requirement. *Cowan v. Stovall*, 645 F.3d 815, 820 (6th Cir. 2014). In addition, the Sixth Circuit has remanded a case to the district court for a determination as to whether the petitioner had shown good cause for failing to exhaust a claim in state court. *Cunningham v. Hudson*, 756 F.3d 477, 486 (6th Cir. 2014). On remand, the district court concluded that the good cause requirement was satisfied, relying on the Sixth Circuit's finding that "Cunningham did not become aware of the factual basis for this claim until he conducted discovery in the federal district court, long after his original state post-conviction proceedings." *Cunningham*

---

it in abeyance results in the petitioner's return to the state court to exhaust whatever claims the Court approved for that process.

*v. Hudson*, Case No. 3:06-cv-167, 2014 WL 5341703 at *2 (N.D. Ohio Oct. 20, 2014), *quoting Cunningham*, 756 F.3d at 486.

In *Tullis v. Kontah*, Case No. 2:06-cv-1025, 2007 WL 915197 at *6 (S.D. Ohio Mar. 26, 2007), the court cited *Riner v. Crawford*, 415 F.Supp.2d 1207, 1211 (D. Nev. 2006), with favor, quoting that case as follows:

> [T]he discussions by the Pennsylvania court in *Baker* [*v. Horn*, 383 F.Supp.2d 720 (E.D. Pa. 2005),] and the Ninth Circuit in *Jackson* [*v. Roe*, 425 F.3d 654 (9th Cir. 2005)] support . . . [the] conclusion that the good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

Despite the absence of more authoritative guidance and keeping in mind the examples from the Sixth Circuit cases cited above, this Court will address whether he has met his burden under *Rhines* for a stay of his habeas case.

**Second Ground for Relief**

In his second ground for relief, Mundt contends that his "trial counsel" were ineffective in failing to obtain an expert who could testify about the causal link between Mundt's organic brain damage and the offenses he was convicted of committing. After the first two paragraphs in his argument, however, it seems that the "trial" he refers to is in relation to the hearing held in the trial court on his petition for post-conviction relief. He argues that the expert obtained by post-conviction counsel, Dr. Douglas Lehrer, a forensic psychiatrist, should have been permitted to testify at Mundt's post-conviction hearing. But the post-conviction trial court, clearly exasperated

with the length of time Mundt's case had been "meandering" through the state courts, excluded Dr. Lehrer's report and testimony because his report was provided to the State just five days before the hearing. (ECF No. 18 at PageID 14244-45.) Dr. Lehrer's report was based in part on a neurobehavioral assessment conducted on Mundt in December 2012, by Dr. Ruben Gur, PhD, a professor of psychiatry, radiology, and neurology at the Perelman School of Medicine at the University of Pennsylvania, and director of the Brain Behavior Laboratory and the Center for Neuroimaging in Psychiatry  Dr. Gur provided a report after evaluating MRI and PET scans of Mundt's brain, and also testified at the post-conviction hearing. After making those points, Mundt argues the *trial court error* in excluding Dr. Lehrer's testimony, and *in the alternative,* the ineffectiveness of his post-conviction counsel for their failure to produce Dr. Lehrer's report and disclose him as a witness well in advance of the post-conviction hearing. (ECF No. 18 at PageID 14246.)

At this juncture, it is unclear whether Mundt's second ground for relief is one advancing an ineffective assistance of trial counsel or post-conviction counsel claim, or a trial court error claim. He offers another possibility in his reply where he contends that his second ground for relief advances the ineffectiveness of his post-conviction counsel only as cause to excuse the default of the claim whether it be trial counsel error or trial court error. (ECF No. 25, PageID 14482.) That is certainly not how the Court reads Mundt's second ground for relief. He explicitly sets it forth in his heading for the ground as an ineffective assistance of counsel claim: "Trial counsel were ineffective for failing to procure an expert who could testify about the causal connection between Mr. Mundt's organic brain damage and the horrific criminal acts he committed." ECF No. 18, PageID 14243.) But it seems to the Court that the main complaint Mundt has is that his post-conviction counsel failed to timely disclose Dr. Lehrer as his expert

6

witness and to provide the doctor's report to the State, causing their exclusion from the post-conviction hearing. This is especially true if by "trial counsel" Mundt means "post-conviction counsel at the trial court level," which, given the context in which that term is used, the Court believes is the most reasonable interpretation of Mundt's words. Adding further credence to the Court's interpretation is Mundt's first ground for relief, where he argues that his actual trial counsel were ineffective for failing to heed the "red flags" pointing to the possibility that Mundt may have suffered organic brain damage. (*See* ECF No. 18, PageID 14235-43.)

As the Warden correctly asserts, there is no federal constitutional right to assistance of counsel in state post-conviction proceedings, much less effective assistance of counsel. (ECF No. 24, PageID 14475, *citing Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *Murray v, Giarratano*, 492 U.S. 1 (1989).) In addition, the AEDPA expressly states that claims of post-conviction counsel's ineffectiveness are not cognizable in federal habeas corpus. 28 U.S.C. § 2254(i). Although Mundt contests the Warden's assertion that Mundt raises an ineffective assistance of post-conviction counsel claim in his second ground for relief, the ground explicitly raises counsel's ineffectiveness and Mundt's arguments insofar as counsel's conduct is concerned focuses exclusively on the post-conviction proceedings. Thus, the Court agrees with the Warden that Mundt's second ground for relief claims his post-conviction counsel were ineffective, and that it is consequently a claim not cognizable in habeas corpus. That being the case, there is no circumstance in which Mundt could satisfy the *Rhines* requirements for a stay of his case. Accordingly, to the extent Mundt's motion seeks to return to the state court to exhaust his second ground for relief, it is **DENIED**.

**Fourth Ground for Relief**

In his fourth ground for relief, Mundt contends that his trial counsel were ineffective for failing to investigate and discover that Mundt was exposed to toxins that may have contributed to his organic brain damage. (ECF No. 18, PageID 14252-58.)

The Warden posits that Mundt has again presented a claim of ineffective assistance of post-conviction counsel, but this time, the Court does not agree. The only mention of the post-conviction proceedings in Mundt's argument is a few sentences referring to Dr. Gur's report and post-conviction testimony intended, as the Court reads them, to establish in those proceedings what could have been discovered by trial counsel had they conducted a more thorough investigation. Mundt argues that trial counsel had been put on notice that Mundt may have suffered brain damage by way of a notation reading "R/O other organic damage impacting brain function" (ECF No. 7-21, PageID 5204) in the report of trial witness Dr. Sandra McPherson, Clinical and Forensic Scientist, and that trial counsel should have investigated further. The brain damage, Mundt contends, was caused by exposure to manganese in the areas in which he has lived.

As cause for his failure to exhaust his ineffective assistance of trial counsel claim in the state court, Mundt offers the ineffectiveness of his post-conviction counsel. (ECF No. 22, PageID 14461.) In this context, Mundt need not "show that the assistance of counsel was so ineffective as to violate the Federal Constitution," *Rhines*, 408 F.Supp.2d 849, thus his burden is somewhat less than if he were arguing counsel's ineffectiveness to excuse a procedural default. *Guilmette v. Howes*, 624 F.3d 286, 294-95 (6th Cir. 2010), *citing Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009).

Still, he does not meet it. Aside from Dr. McPherson's ambiguous reference in her report to "R/O other organic damage impacting brain function,"[2] Mundt points to nothing in the state court record that would have alerted trial counsel to his allegation that the environment around Mundt's home or homes through the years was contaminated with manganese or that he suffered brain damage as a result of such exposure. In fact, in the post-conviction hearing his trial attorney testified that he understood the notation as indicating that Dr. McPherson had ruled out a diagnosis of organic brain damage. (ECF No. 8-17, PageID 13261.) That is not an unreasonable interpretation of such an ambiguous notation. In addition, although Mundt alleges his trial counsel were ineffective for not acting on Dr McPherson's ambiguous comment, his post-conviction counsel did present evidence at Mundt's hearing on his petition, including that of Dr. Ruben Gur, who, after evaluating MRI and PET scans on Mundt's brain, testified on direct examination as follows:

> Q: So in Mr. Mundt's case the left side of his brain is worse. Is that what we're seeing here?
>
> A: The left side of the brain is much worse. And you can see that the back is where there is [sic] deficits so there are deficits in processing in the back. But it's also you see right in the orbital area, right in the frontal orbital area there is a deep blue mark which indicates damage in that area. So this kind of behavioral image . . . you get often with head injuries because you see both the – even if you are hit in the back of the head you still will have damage in the front because of those orbital bones in the front.
>
> Q: So does the brain bounce, is that what happens?
>
> A: So the brain rubs against those bones.

---

[2] Dr. McPherson's comment can be read as meaning that she had ruled out organic brain damage, or as a directive to counsel that it should be ruled out, presumably by someone other than herself.

> Q: And is it significant to you that the left side is worse than the right side? What does that mean?
>
> A: It means it's probably not just – by itself. Like so exposure to toxins or chronic alcoholism would produce a more symmetric presentation. When it's a-semmetric like that it's either a tumor or a stroke or lateral blow to the head that creates more mischief in one side than the other.

(Post-conviction Hearing Transcript, ECF No. 8-18, Page ID 13481-82.) While the State's objection to Dr. Gur's use of the word "probably" in his last answer quoted above was sustained, it is questionable whether the prefatory sentence applies to the totality of Dr. Gur's answer to the question asked. Furthermore, Dr. Gur stated in his report that the abnormalities he observed are consistent with several causes including traumatic brain injury, fetal alcohol syndrome, or a seizure disorder. (Report of Dr. Ruben Gur, ECF No. 7-11, DPageID 3704.) Dr. Gur never attributed any part of the brain damage he detected in Mundt to an excessive exposure to manganese or any other mineral, for that matter. Mundt has given the Court no reason to doubt his own post-conviction expert's conclusions, nor has he provided any evidence, as opposed to speculation, that exposure to manganese caused him to suffer brain damage. Accordingly, a return to the state court to exhaust his fourth ground for relief would be fruitless. His motion to stay his habeas case for that purpose is, therefore, **DENIED**.

**CONCLUSION**

Mundt's second ground for relief states a claim not cognizable in habeas corpus. His fourth ground for relief is also plainly meritless given the testimony presented by his own expert witness in his post-conviction proceedings. Mundt's motion to stay his habeas case so he can return to the

state court to exhaust those two claims is DENIED.

December 21, 2018                                         s/ *Stephanie K. Bowman*
                                                          Stephanie K. Bowman
                                                          United States Magistrate Judge