# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

FREDERICK A. MUNDT,

                     Petitioner,         :     Case No. 2:17-cv-773

     - vs -                            District Judge Michael Barrett
                                     Magistrate Judge Stephanie Bowman

CHARLOTTE JENKINS, Warden,     *Death Penalty Case*
                               :
               Respondent.

# DECISION AND ORDER DENYING PETITIONER'S MOTIONS FOR DISCOVERY AND TO EXPAND THE RECORD

This capital habeas corpus case is before the Court on Petitioner Frederick Mundt's Motions for Discovery (ECF No. 37) and to Expand the Record (ECF No. 38).  The Warden opposes Mundt's motions (ECF Nos. 39 and 40, respectively), and Mundt has filed his replies (ECF Nos. 41 and 42, respectively).

**Mundt's Motion for Discovery**

A habeas petitioner is not entitled to discovery as a matter of course, but only upon a fact-specific showing of good cause and in the Court's exercise of discretion.  Rules Governing § 2254 Cases, Rule 6(a); *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  "[T]he 'broad discovery provisions' of the Federal Rules of Civil Procedure d[o] not apply in habeas proceedings."  *Id.*, quoting *Harris v. Nelson*, 394 U.S. 286, 295 (1969).  Under the All Writs Act, however, federal court possess the power to "fashion appropriate modes of procedure," including discovery, to dispose of habeas petitions "as law and justice require."  28 U.S.C. § 1651; *Harris*, *supra*, at 299-

300.  When a petitioner "offers nothing more than vague musings on how . . . [the desired discovery] might unfold," a district court may correctly determine that he "fail[s] to satisfy the 'good cause' standard required to obtain habeas corpus discovery."  *Stojetz v. Ishee*, 892 F.3d 175, 207 (6th Cir. 2018), quoting *Stojetz v. Ishee*, No. 2:04-cv-263, 2014 WL 4775209 at *75 n.12 (S.D. Ohio Sept. 24, 2014).

Mundt's stated purpose for requesting discovery is to develop facts respecting his post-conviction counsel's alleged ineffectiveness caused by their failure to raise as error in post-conviction his trial counsel's alleged ineffective representation when they failed to obtain MRI and PET scans of Mundt's brain to diagnose his organic brain damage and explain its connection to his criminal behavior.  (Mtn. for Discovery, ECF No. 37, PageID 14647.)  The underlying ineffective assistance of trial counsel claim is the basis for Mundt's second ground for relief in his habeas petition.  (Petition, ECF No. 18, PageID 14243-46.)

Although a claim of ineffective assistance of post-conviction counsel is not itself cognizable in habeas corpus, 28 U.S.C. 2254(i),[1] the Supreme Court has allowed that post-conviction counsel's ineffectiveness can excuse a procedural default in certain narrow circumstances.  In *Martinez v. Ryan*, 566 U.S. 1, 12 (2012), the Court set forth four requirements a petitioner must meet for post-conviction counsel's performance to excuse a procedural default:

 1.  He has a "substantial" claim of ineffective assistance of trial counsel;

 2.  He had "no counsel or counsel . . . was ineffective" under *Strickland v. Washington*, 466 U.S. 668 (1984), in his collateral-review proceeding;

 3.  The collateral-review proceeding was the "initial" review of the claim; and

---

[1] "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

> 4. State law requires ineffective-assistance-of-trial-counsel claims to be raised in the first instance in a collateral-review proceeding.
>
> . . .
>
> The following year, . . . the Court extended the *Martinez* exception by modifying the fourth requirement. . . . *Trevino v. Thaler*[, 569 U.S 413 (2013)] applied the *Martinez* framework to any state where "by reason of its design and operation, [state procedure] makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.*

*White v. Warden*, 940 F.3d 270, 276 (6th Cir. 2019), quoting *Martinez*, 566 U.S at 9, 17; *Trevino*, 569 U.S. at 429. In *White*, the Sixth Circuit concluded that *Trevino* and its modification of *Martinez* applies in Ohio, reasoning that Ohio recognizes the necessity of expanding the record in in state post-conviction where a petitioner's ineffective assistance of trial counsel claim relies on evidence outside the trial record. *White*, 940 F.3d at 277.

On appeal from denial of his state post-conviction petition, the appellate court agreed with the trial court, deciding that Mundt's ineffective assistance of trial counsel claim respecting the failure to request and present MRI and PET scan evidence at trial was barred by the doctrine of *res judicata*, as it could have been presented on direct appeal. *State v Mundt*, 2016-Ohio-4802 at ¶ 23 (Ohio App. 7th Dist. June 30, 2016). Such a claim, however, inevitably depends upon evidence not in the state court trial record to satisfy, or at least attempt to satisfy, the prejudice prong of an ineffective assistance of trial counsel claim. When a state court's reliance on its own rule of procedural default is misplaced, federal habeas review is not precluded. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005), citing *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005); *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001). In Mundt's case, the post-conviction trial and appellate courts misapplied the state procedural rule by determining that Mundt's ineffective assistance of

trial counsel claim should have been brought on direct appeal; the claim ineluctably relies upon evidence outside the trial court record, that being the scans and testimonial analysis of their results. Thus, post-conviction counsel properly brought the claim in the post-conviction proceedings, supporting it with the MRI and PET scans and Dr. Gur's report and testimony, and attempting to support it with the report and testimony of Dr. Lehrer.

In the penalty phase of Mundt's trial, he presented the testimony of Dr. Sandra McPherson, a psychologist. Dr. McPherson interviewed Mundt, administered various psychological tests to him, scored them, reviewed background material and, as relevant here, diagnosed him as follows

> Axis III:    History of a variety of complaints, some of which
> may be indicative of stress or exacerbated by same
> including fibromyalgia and low back pain. Seizure
> disorder, R/O other organic damage impacting brain
> function.

(Appendix to Return of Writ ("App'x to ROW"), ECF No. 7-21, PageID 5204.)

In his post-conviction proceedings, Mundt's counsel faulted trial counsel for not requesting MRI and PET scans based on Dr. McPherson's Axis III notation, "R/O other organic damage impacting brain function." Defense counsel Andrew J. Warhola testified in the post-conviction hearing that to him, "R/O" meant Dr. McPherson had ruled out other organic brain damage. (Post-conviction Tr. ("PC Tr."), ECF No. 8-17, PageID 13261.)

Post-conviction counsel requested funds for the scans on May 5, 2006 (App'x to ROW, ECF No. 7-10, PageID 3266) and on October 1, 2010, nearly four and one-half years later, the state court granted the request, *id*. at 3496. More than a year after that, and after the PET scan was completed, the court again ordered that the MRI be conducted at the Ohio State University Medical

Center ("OSUMC") "forthwith."[2]  (App'x to ROW, ECF No. 7-11, PageID 3546.)  Still later, in January 2012, the court ordered another MRI to be performed at OSUMC because the first MRI was performed elsewhere and the second was not clear enough to be of use.  (App'x to ROW, ECF No. 7-11, PageID 3558.)  Additional delay was caused by the original medical doctor retained to interpret the MRI prior to Dr. Gur's application of his algorithm to the data taking an unexpected leave of absence.  *Id.* at PageID 3584.  Dr. Gur's report was dated December 14, 2012, and in it he notes that Dr. William Yuh, M.D., reported his findings after review of the MRI on the day it was performed, June 8, 2012.  *Id.* at PageID 3700-01.  So far, it is safe to say that no ineffective assistance had been provided by Mundt's post-conviction counsel as they diligently pursued obtaining the MRI and PET scans, and little to none of the delay in obtaining funding or the scans themselves is attributable to them.  In fact, the greatest of delay is attributable to the state court, which took more than four years to rule on Mundt's motion for funds to conduct the scans.

After receiving Dr. Gur's report, post-conviction counsel also engaged Dr. Douglas Lehrer to interpret Dr. Gur's report in a way that was less technical and and to put Dr. Gur's report into context with Mundt's background.  (PC Tr., ECF No. 8-17, PageID 13429.)  Dr. Lehrer reviewed documents relating to Mundt's childhood, upbringing, medical and school records, and Dr. Gur's report.  (App'x to ROW, ECF No. 7-12, PageID 3860-61.)  Dr. Lehrer's report is dated January 16, 2013, and Mundt asserts in his motion for discovery that it was served on the State the very next day (Mtn. for Discovery, ECF No. 37, PageID 14653).  Following the intervening weekend and President's Day holiday Mundt's hearing began on Tuesday, January 22, 2013.

Mundt's attorneys sought to introduce Dr. Lehrer's report and testimony, but the State

---

[2] In reviewing the post-conviction record, the Court is unable to determine when the first MRI was conducted, but it is clear that there were three altogether; one at CMC, and two more at OSUMC.  (PC Tr. ECF No. 8-17, PageID 13428.)

objected, and the trial court decided that "[u]nder the circumstances – this case has been meandering forever and to spring an expert report two days, three days before the hearing I think is unconscionable and we're not going to hear from Dr. Lehrer. . . . Particularly in a case that started in 2006." (PC Tr., ECF No. 8-17, PageID 13430.)

Mundt seeks the following discovery:

1. Depositions of his post-conviction counsel Jennifer Prillo, Tyson Fleming, Gregory Hoover, and

2. Deposition of his post-conviction legal expert Gregory Meyers.

(Mtn. for Discovery, ECF No. 37, PageID 14653-54.)

Mundt explains that deposing his post-conviction counsel would "clarify whether post-conviction counsel had any professionally reasonable justification for not presenting Dr. Lehrer's testimony or report to the trial court . . . [and] why post-conviction counsel sought Dr. Lehrer's opinion—and the value that opinion would have had to the case that post-conviction counsel wanted to put on for Mr. Mundt." *Id*. at PageID 14653-54.

Most, if not all, of Mundt's justification for requesting to depose his three post-conviction counsel, however, was presented to the state court in the post-conviction proceedings. His trial counsel explained to the court that Dr. Lehrer could not compose his report until he had an opportunity to review Dr. Gur's report. (PC Tr., ECF No. 8-17, PageID 13425-26.) In the discussion between the parties and the court in the post-conviction hearing, it was noted that the court had earlier ordered that any experts reviewing the scans file his or her report within thirty days of the scan. *Id*. at PageID 13428. The only explanation for Dr. Gur's failure to adhere to the court's order was the unexpected leave of absence of the medical doctor who was to interpret the MRI, *id*. at PageID 13429, but as stated above, Dr. Yuh interpreted the MRI and wrote his report on the same day the MRI was performed. Thus, the delay between Dr. Yuh's report and Dr. Gur's

is unexplained.  Mundt's counsel acknowledged that Dr. Lehrer is no more qualified to opine on the scan results than Dr. Gur, and that they still intended to have Dr. Gur testify in addition to Dr. Lehrer.  (PC Tr., ECF No. 8-17, PageID 13430.)  At that point, the state court excluded Dr. Lehrer's report and said he would not be testifying at the hearing.  *Id*.

Mundt also seeks to depose attorney Gregory Meyers, who was called as his expert witness in the post-conviction hearing to testify about prevailing professional norms in capital cases at the time of Mundt's trial.  (Mtn. for Discovery, ECF No. 37, PageID 14654.)  In fact, Meyers' testimony was only proffered.  (PC Tr., ECF No. 8-17, PageID 131 *et seq*.)  "Proffered evidence" is defined as "[e]vidence that is offered to the court to obtain a ruling on its admissibility."  Black's Law Dictionary (11th ed. 2019).  This Court has found nothing in the record indicating Meyers' testimony was admitted into evidence and Mundt does not allege that it was, nor does he contend that the post-conviction court erred by excluding his proffered testimony.  The post-conviction state appellate court makes no mention of Meyers' testimony or affidavits in its opinion.

Mundt states that "Meyers may have information pertinent to post-conviction counsels' [sic] decision to retain Dr. Lehrer or post-conviction counsels' [sic] failure to timely produce Dr. Lehrer as a witness at the hearing."  (Mtn. for Discovery, ECF No. 37, PageID 14654.)  In addition, Mundt suggests Meyers "can also provide his insights into the prevailing professional norms in place in Ohio at the time of the state hearing."  *Id*.  As stated above, post-conviction counsel's reasons for engaging Dr. Lehrer and the untimely presentation of him as an expert witness are apparent on the existing post-conviction record.  Mundt fails to mention or even speculate as to what additional information about that matter he hopes discovery would produce.  As for "insights into the prevailing professional norms," post-conviction counsel stated that Meyers would explain Ohio's standards for attorneys to become certified by the Ohio Supreme Court as capital defense

counsel under the former Ohio Sup. R. 20[3] and materials presented at required seminars to obtain and maintain certification. (PC Tr., ECF No. 8-17, PageID 13367.) In response, the judge asked, "Okay. Well, does he have to tell me what those are? Aren't they written down some place" *id*. at PageID 13367, as indeed they were at the time, under Rule 20. Mundt's counsel apparently saw which way the wind was blowing before the judge ruled on whether to admit Meyers' testimony and requested that "at least Mr. Meyers be allowed to testify to insure that we have a complete record." *Id*. at PageID 13368. Thereafter, Meyers' testimony was proffered. There are no juries in post-conviction hearings in Ohio, so the "trier of fact" is the judge. Furthermore, this Court is well aware of the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. ed. Feb. 2003), 31 Hof. L. Rev. 913. As such, it is difficult to imagine how an attorney, even one as experienced and respected as Greg Meyers, could "*assist the trier of fact* to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)(emphasis supplied).

Mundt has not demonstrated that he had "no counsel or counsel . . . was ineffective" under *Strickland v. Washington*, 466 U.S. 668 (1984), in his collateral-review proceeding." *White*, 940 F.3d at 276. On the contrary, it appears that post-conviction counsel diligently tried to present the MRI and PET scans of his brain and expert testimony to put them into context with Mundt's crime. True, they were late in providing Dr. Lehrer's report to the prosecution, but Dr. Gur's report, on which Dr. Lehrer relied, was provided to defense counsel barely a month before the start of the trial. Defense counsel could have asked for a continuance of the post-conviction hearing in order to comply with the court's order that expert reports be filed no less than thirty days before the trial, but given the trial judge's clearly expressed impatience and frustration with the post-conviction

---

[3] The provisions governing the appointment of counsel that were formerly contained in Ohio Sup.R. 20 are now in the Rules for the Appointment of Counsel in Capital Cases, Appt.Coun.R. 1-6, eff. February 1, 2015.

petition's "meandering forever" in his court, it would have likely been denied. Mundt's motion for discovery is **DENIED**.

**Mundt's Motion to Expand the Record**

In his motion to expand the record, Mundt seeks to add to the record Dr. McPherson's declaration dated June 1, 2018 (Petition, ECF No. 18, PageID 143339-40); three 2004 newspaper articles about Brittany Hendrickson's murder along with the declaration of Federal Public Defender investigator Robert L. Watts, *id.* at PageID 14346-50; and the 42-page forensic psychological and neuro-psychological evaluation by clinical neuropsychologist Diane M. Mosnik, Ph.D., (ECF No. 38-1, PageID 14668-709). He asserts the materials are relevant to resolve the following five of his ten habeas grounds for relief:

1. Trial counsel were ineffective for failing to discover Mr. Mundt suffers from organic brain damage.

2. Trial counsel were ineffective for failing to procure an expert who could testify about the causal connection between Mr. Mundt's organic brain damage and the horrific criminal acts he committed.

3. Due to Mr. Mundt's serious and severe mental illness, his death sentence violates the Eighth and Fourteenth Amendments to the United States Constitution.

4. Trial counsel were ineffective for failing to investigate and discover that Mr. Mundt was exposed toxins that likely contributed to his organic brain damage, depriving him of his right to a fair trial and sentencing determination in violation of the Fifth, Sixth, Eighth, [and] Fourteenth Amendments to the United States Constitution.

5. Mr. Mundt's right to due process and a fair trial by an impartial jury was violated by the trial court's denial of a motion for [a] change of venue due to pervasive prejudicial pretrial publicity.

(ECF No. 38, PageID 14664-65.)

In addition to Dr. McPherson's and Watts' declarations and the newspaper articles attached to Mundt's petition and which he now seeks to add to the record, there appears a single page of a transcript from an unidentified proceeding in which the witness is unidentified as well.  (ECF No. 18, PageID 14351.)  Mundt does not explain the relevance of that page in his motion to expand the record, nor does he explain its significance to the grounds for relief noted above.  Consequently, this Court sees no reason to consider it further.

Mundt recognizes that in *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court limited habeas courts' ability to consider evidence that was not presented to the state courts.  (ECF No. 38, PageID 14661-62.)  He states that *Pinholster* applies only to claims that the state court has adjudicated on the merits or when the state court's decision was objectively unreasonable.  *Id*. at PageID 14662.

The Warden argues as follows:

> The jurisprudence in this District shows expansion of the record is not appropriate because "this Court must evaluate the state court decision on the basis of evidence the state court had before it, not evidence added to the record after the case came to federal court." See *Martin v. Warden*, 2019 US. Dist. [LEXIS] 219009 at *4 (S[.] D[.] O[hio Dec. 20, 2019)(]Merz, Magistrate Judge)("The Supreme Court has severely limited the evidence a district court can consider in a habeas case, at least with respect to issues decided on the merits by the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).  If the state courts have thus decided an issue, the district court cannot hold an evidentiary hearing or expand the record to add more evidence until and unless it has decided that the state court decision is an objectively unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts on the basis of the evidence presented.  28 U.S.C. 2254(d)(1) and (2).")
>
> . . .
>
> Since Mundt seeks expansion of the record for the plainly improper

10

reason of adding material not considered by the state courts to bolster his arguments attacking the merits of the state court adjudications, the Court should overrule Mundt's Doc. 38 Motion to expand the record.

(ECF No. 40, PageID 14714-15.)

Mundt's Reply to the Warden's opposition to the motion to expand the record is perplexing as all but one sentence of it reverts to arguing the issues that are the focus of his motion for discovery, discussed above, to wit, the applicability of the *Martinez/Trevino/White* line of cases as it pertains to post-conviction counsel's alleged ineffectiveness. (ECF No. 42, PageID 14727-29.) Thus, it adds little to Mundt's motion to expand the record which does not mention *Martinez*, *Trevino*, or *White*.

Assuming without considering the procedural status of the five claims Mundt seeks to support with evidence he now asks to be supplemented to the record, and because "[t]he procedural default defense is not before the Court for adjudication at this point in time, *Elmore v. Warden*, No. 1:07-cv-776, 2019 WL 5704042 at *6 (S.D. Ohio Nov. 5, 2019), the Court denies Mundt's request without prejudice. Should the Court determine at a later date that some or all of the five claims are procedurally defaulted, he may renew his motion to expand the record.

It is true that the *Pinholster* holding prohibits a federal habeas court from considering evidence outside the state court record when reviewing state court merits decisions under 28 U.S.C. § 2254(d)(1). 563 U.S. at 181-82. The Sixth Circuit Court of Appeals has observed, however, that "expansion of the record does not necessarily require that the district court consider that evidence in evaluating the merits of the habeas claim' . . . [but it] can assist the district court in deciding other issues besides the merits of the claim." *Moore v. Mitchell*, 708 F.3d 760, 784 (6th Cir. 2013). But in his motion, Mundt argues only that "expansion of the record is proper because these materials are '*relevant to the determination of the merits of the petition*,'" quoting Habeas

Rule 7(a).  (ECF No. 38, PageID 14659 (emphasis added)).  He suggests no other purpose for wanting to expand the record.

*Moore*, in fact, was a case in which the State opposed all of Moore's attempts at discovery, but in which the parties ultimately filed a joint motion to expand the record with new evidence obtained through discovery.[4]  Prior to *Pinholster*, the district court had permitted the record to be supplemented with the new evidence, *Moore v. Mitchell*, 531 F.Supp.2d 845, 859 (S.D. Ohio Jan. 18, 2008).  On appeal, the Sixth Circuit rejected the argument that the requirements of § 2254(d)(1) could be waived either party, framing it as a jurisdictional matter imposed on federal courts by the statute.  The appellate court held that *Pinholster* prohibited expansion of the record regardless of the parties' joint motion.  *Moore*, 708 F.3d at 784.  Expanding the record when one party objects, as in Mundt's case, is irreconcilable with the Sixth Circuit's holding in *Moore*, where the parties agreed to supplement the record.  "While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* . . . precludes it.  *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013).  Finally, "It would defy logic to preclude a petitioner from developing factual information in an evidentiary hearing [under *Pinholster*], but allow her to introduce the same factual information via discovery and expansion of the record."  *Broom v. Bobby*, No. 1:10-cv-2058, 2018 WL 1621083 at * 4 (N.D. Ohio Apr. 4, 2018), quoting *Caudill v. Conover*, 871 F. Supp. 2d 639, 646 (E.D. Ky. 2012).

As for Mundt's first, second, fourth, and fifth claims upon which expansion of the record is sought, his motion is **DENIED** pursuant to *Pinholster* and *Moore*.

Mundt also seeks to expand the record in support of his third claim in which he contends

---

[4] The new evidence consisted of depositions of Moore's trial attorneys, his mitigation specialist, his psychologist, as well as others, and the files of the attorneys and the mitigation specialist.  *Moore*, 708 F.3d at 779-80.

he is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986).  It is likely, indeed certain, that Mundt will not have an execution date set for many years yet.[5]  Incompetent-to-be-executed claims are not ripe until execution is imminent.  *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998).  Furthermore, "The statutory bar on 'second or successive' applications [for a writ of habeas corpus] does not apply to a *Ford* claim brought in an application filed when the claim is first ripe." *Panetti*, 551 U.S. at 947. Thus, the proper time for Mundt to bring his incompetent-to-be-executed claim will be when an execution date is set in his case, or, because Ohio schedules executions years in advance, at a time that provides the Court with ample time to consider his claim.  Accordingly, his motion to expand the record with materials supporting his third claim is **DENIED** without prejudice.


June 9, 2020.                                      s/ *Stephanie K. Bowman*
                                                   Stephanie K. Bowman
                                                   United States Magistrate Judge

---

[5] Ohio currently has twenty-four executions scheduled between now and 2024.  https://drc.ohio.gov/execution-schedule (last viewed on June 9, 2020.).